**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**ALEXIS LIEN, OSB # 110569**
Assistant United States Attorney
Alexis.Lien@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2936
Telephone:     (503) 727-1000
Facsimile:     (503) 727-1117

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **INSTITUTE FOR APPLIED ECOLOGY; INSTITUTE FOR BIRD POPULATIONS; MID KLAMATH WATERSHED COUNCIL,** | Case No.: **6:25-cv-02364-AP** |
| Plaintiffs, | **RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| **DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; BUREAU OF LAND MANAGEMENT; NATIONAL PARK SERVICE; UNITED STATES FISH AND WILDLIFE SERVICE; UNITED STATES GEOLOGICAL SURVEY,** | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

LEGAL STANDARDS ........................................................................................................4

ARGUMENT ....................................................................................................................5

    I.     This Court Lacks Jurisdiction to Review Plaintiffs' Grant Termination Claims ..........5

    II.    Plaintiffs Do Not Make a Clear Showing They Are Entitled to a Preliminary
          Injunction .............................................................................................................10

          a.   Plaintiffs Do Not Have Sufficient Evidence to Show Their First Amendment
              Claims Are Likely to Succeed on the Merits .......................................................10

          b.   Plaintiffs Are Unlikely to Suffer Irreparable Harm Absent Injunctive Relief .......17

          c.   The Balance of Equities and the Public Interest Weigh in the Federal
              Government's Favor............................................................................................18

    III.   Any Injunctive Relief Should Be Stayed Pending Appeal, Accompanied By
          A Bond, And No Status Reports Should Be Required ..................................................19

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........................................ 4

*Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176 (9th Cir. 2010) .................................... 20

*Am. Council of Learned Societies v. McDonald*, 792 F. Supp. 3d 448 (S.D.N.Y. 2025) ............. 14

*Am. 'of Univ. Professors v. Trump*, No. 25-CV-07864-RFL, 2025 WL 3187762 (N.D. Cal. Nov. 14, 2025) ........................................................................... 15

*Brown v. United States Forest Serv.*, 465 F. Supp. 3d 1119 (D. Or. 2020) .................................... 4

*Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378 (Fed. Cir. 2001) .................... 8

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ........................................................... 5, 9, 18, 19

*Ensign v. U.S. Bank Nat'l Ass'n*, No. 3:16-CV-01609-HZ, 2016 WL 6897785 (D. Or. Nov. 22, 2016) ................................................................................................. 8

*Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198 (S.D. Fla. 2007) ..................... 18

*Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968 (9th Cir. 1981) ...................................... 4

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ......................................... 9

*Gunn v. Minton*, 568 U.S. 251 (2013) ............................................................................................ 4

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997) ............................................................... 7

*Kidwell v. Dep't of Army*, 56 F.3d 279 (D.C. Cir. 1995) ................................................................ 6

*Massachusetts v. NIH*, --- F.4th ----, 2026 WL 26059 (1st Cir. Jan. 5, 2026) ............................. 10

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) .............................................................. 6

*Munaf v. Geren*, 553 U.S. 674 (2008) ..................................................................................... 4, 10

*N. Star Alaska v. United States*, 14 F.3d 36 (9th Cir. 1994) .......................................................... 7

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. ---, 145 S. Ct. 2658 (2025) ...... 5, 18

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................................... 4, 18

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) .......................................... 6

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132
    (2d Cir. 1999) ........................................................................................................... 9

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12 (1st Cir. 1996) .............................. 17

*Sampson v. Murray*, 415 U.S. 61 (1974) ........................................................................ 18

*Snell v. Cleveland, Inc.*, 316 F.3d 822 (9th Cir. 2002) .................................................. 4

*Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985) ........................................ 8

*Sols. in Hometown Connections v. No*em, *2026 WL 179590 (4th Cir. Jan. 23, 2026)* .................. 9

*Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100
    (4th Cir. June 5, 2025) ................................................................................. 10, 15, 18

*Thakur v. Trump*, No. 25-4249, 2025 WL 3760650
    (9th Cir. Dec. 23, 2025) ........................................................................ 5, 6, 7, 9, 15, 18, 19

*Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641 (9th Cir. 1998) .......................... 6, 8

*United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017 (9th Cir. 2023) ................................ 6

*Up State Fed. Credit Union v. Walker*, 198 F.3d 372 (2d Cir. 1999) ............................................. 7

*Washington v. United States Dep't of Educ.*, 161 F.4th 1136 (9th Cir. 2025) ................................ 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................4, 10, 11, 13, 16, 17

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440
    (D.R.I. 2025) ........................................................................................................... 2

## FEDERAL STATUTES

28 U.S.C. § 1491(a)(1) ............................................................................................... 5, 6

## FEDERAL RULES

Fed. R. Civ. P. 12(h)(3) ............................................................................................... 4

Fed. R. Civ. P. 65(c) ................................................................................................... 19

## FEDERAL REGULATIONS

2 C.F.R. Part 200.340 ............................................................................................ 2, 12, 15

2 C.F.R. Part 200.340(a)(4) ................................................................................... 2, 12, 16

## INTRODUCTION

Following United States Supreme Court and Ninth Circuit case law, this Court does not have jurisdiction over Plaintiffs' contract-based claims regarding the terminations of their grants. This threshold issue warrants denial of Plaintiffs' motion for a preliminary injunction. Further, the First Amendment assertions in the Complaint are contradicted by Defendants' actual statements. This Court should decline to ascribe the statements of a single writer for a non-federal, non-defendant, for-profit news organization to Defendants, especially where the speculation contained therein is contradicted by the current record: even the Daily Caller article Plaintiffs purport establishes a speech-related motivation for their grant terminations specifically notes that the "'[t]he grants were cut as part of the [Department of Interior]'s effort to cut costs and save taxpayer dollars, according to the agency.'"[1] There is insufficient evidence to support Plaintiffs' claim that their First Amendment rights have been infringed that would justify a preliminary injunction, and Plaintiffs cannot establish the other necessary elements for a preliminary injunction. For these reasons, Plaintiffs' motion should be denied. Nonetheless, if the Court grants Plaintiffs relief, Defendants respectfully request that such relief be appropriately narrowed and an appropriate bond be required.

## BACKGROUND

Plaintiffs were the recipients of a number of grant awards from the U.S. Department of the Interior (the "Department") and certain of its components: the Bureau of Land Management, the National Park Service, the U.S. Fish and Wildlife Service, and the U.S. Geological Survey. *See* Compl. ¶ 2. Plaintiffs' at-issue grant awards related to various environmental and conservation

---

[1] Audrey Streb, *EXCLUSIVE: Trump Admin Axes Millions in Grants to Several DEI-Tied Environmental Organizations*, Daily Caller (Sep. 23, 2025), https://perma.cc/8F9A-8VEN.

projects.  *Id.* ¶¶ 22–29.  Plaintiffs' grant awards did not relate to or fund any diversity, equity, and inclusion (hereinafter "DEI") programs.  *Id.* ¶ 39.

The Department has, over the past year, taken steps to effectuate one of its top priorities – cutting costs.  *See, e.g.*, Statement of Secretary Doug Burgum United States Department of the Interior Before the Subcommittee on Interior, Environment, and Related Agencies Committee on Appropriations     United     States     Senate     (May     21,     2025), https://www.doi.gov/sites/default/files/documents/2025-05/20250521-doi-fy26-budget-s-approps-burgum.pdf at 2, 7 (stating "[w]hen it comes to land management, we are cutting wasteful spending by prioritizing the Administration's goals of federalism" and noting the Department's 2026 budget is focused on "eliminating wasteful and unnecessary spending").  The Department has in the last year identified and frozen or cancelled grants it determined were no longer in line with the administration's priorities.  *See* Declaration of Melissa Hutchinson, ¶ 7; Declaration of Gerald Lewandowski, ¶ 7; Declaration of Ryan Oster, ¶ 7; Declaration of Heidi Sage, ¶ 7; *see also Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440 (D.R.I. 2025) (recent litigation enjoining the Department's freezing of grants related to, among other topics, environmental projects).

On September 23, 2025, Department components began sending termination notifications to Plaintiffs relating to the at-issue grants.  Compl. ¶ 31.  The Department's explicit rationale for the grant terminations was pursuant to 2 C.F.R. Part 200.340, which provides "[t]he Federal award may be terminated in part or its entirety as follows: … '[b]y the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities.'"  *Id.*; 2 C.F.R. Part 200.340(a)(4).  In announcing the grant terminations, United States Secretary of the Interior

Doug Burgum (hereinafter "Secretary Burgum") touted the cost savings realized by the grant terminations. Compl. ¶ 33. In response to inquiries from Plaintiffs, the Department reiterated that the grants were terminated because they no longer aligned with current program goals and agency priorities. *Id.* ¶ 36. There is no evidence in the current record that the Department has asserted anything other than cost-cutting and effectuation of agency priorities to the public or the Plaintiffs as justification for the terminations of the at-issue grants. *See id.* ¶¶ 31, 33, 36; Hutchinson Decl., ¶ 7; Lewandowski Decl., ¶ 7; Oster Decl., ¶ 7; Sage Decl., ¶ 7.

In spite of this record, Plaintiffs allege their grants were actually terminated because of Plaintiffs' DEI-related speech, and that the grant terminations constitute a violation of Plaintiffs' First Amendment and Fifth Amendment rights. Compl. ¶¶ 39, 65–82. Plaintiffs base this assertion on an article from a non-defendant, for-profit news organization, Daily Caller, entitled "EXCLUSIVE: Trump Admin Axes Millions in Grants to Several DEI-Tied Environmental Organizations." *Id.* ¶¶ 32, 39. The article's sole attribution to statements from the Department is that "'[t]he grants were cut as part of the DOI's effort to cut costs and save taxpayer dollars, according to the agency.'"[2] Secretary Burgum posted about the grant terminations on X, stating "Because of @DOGE's cost-cutting initiative, @Interior saved American taxpayers MILLIONS of dollars today by cutting nearly 80 grants for wasteful environmental groups. Real action = real savings" and included a link to the Daily Caller article. Compl. ¶ 33. The Department of Government Efficiency also posted on X about the grant terminations, including reposting Secretary Burgum's X post. *Id.* ¶ 34.

---

[2] Streb, *supra* n.1.

Plaintiffs filed their Complaint seeking declaratory and injunctive relief on December 18, 2025 (ECF No. 1) and, three months after the at-issue grants were terminated, the present motion for preliminary injunction (ECF No. 17).

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citation omitted). The court "'is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'" *Brown v. United States Forest Serv.*, 465 F. Supp. 3d 1119, 1126 (D. Or. 2020) (quoting *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981)). "Because subject matter jurisdiction goes to the power of a court to hear a case, a court . . . must dismiss if no subject matter jurisdiction exists." *Id.* (citing Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002)).

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate that: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer an irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) the proposed injunction is in the public interest. *Id.* at 20. With respect to the second prong of the test, the moving party "must establish that irreparable harm is *likely*, not just possible[.]" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). When, as here, "the Government is the opposing party[,]" the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**ARGUMENT**

Because Plaintiffs' First Amendment claim sounds in contract, the appropriate venue for this dispute is the Court of Federal Claims. This Court therefore lacks jurisdiction over this matter and Plaintiffs' motion should be denied. Even reaching the preliminary injunction analysis, Plaintiffs' First Amendment claim is premised on speculation from non-defendants and does not constitute a colorable First Amendment claim against Defendants. Further, Plaintiffs fail to make a clear showing that they would suffer irreparable harm absent injunctive relief, and the balance of equities and public interest weigh in the government's favor. For these reasons, Plaintiffs' motion should be denied.

## I.     This Court Lacks Jurisdiction to Review Plaintiffs' Grant Termination Claims

Plaintiffs challenge the termination of several grant awards they received from various Department components and seek specific performance of those grants: namely, the reinstatement of the terminated grants (which would necessitate the government pay out money obligated under those contracts) and a prohibition against the government from otherwise terminating or restricting their use of the grant funds. *See* Compl. at 27-28, ¶¶ B-C; Mot. at 33-34, ¶¶ 2-3. The Supreme Court has repeatedly held over the last year that grant terminations like the ones at issue here are contract disputes and claims relating thereto, under the Tucker Act, 28 U.S.C. § 1491(a)(1), should likely therefore be heard in the Court of Federal Claims. *See Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (hereinafter "*California*"); *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. ---, 145 S. Ct. 2658, 2661 (2025) (hereinafter "*NIH*") (stating "the District Court likely lacked jurisdiction to hear challenges to the grant terminations, which belong in the Court of Federal Claims"). *NIH* was recently cited by the Ninth Circuit in *Thakur v. Trump*, No. 25-4249, 2025 WL 3760650, at *2-3 (9th Cir. Dec. 23, 2025), in holding that the government was

likely to succeed in its argument that the district court did not have jurisdiction over similar grant termination claims. Because Plaintiffs' claims and relief sought are contract-based, this Court should follow *California*, *NIH*, and *Thakur* and hold that, under the Tucker Act, the proper forum for Plaintiffs' grant termination claims is the Court of Federal Claims.

The Tucker Act gives the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). "Because this statute 'grants consent to suit' and 'impliedly forbids' declaratory and injunctive relief, it precludes bringing contract claims against the United States in federal district court pursuant to the APA's waiver of sovereign immunity." *Thakur*, 2025 WL 3760650, at *2 (citing *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645–46 (9th Cir. 1998). Therefore, "for contract claims against the United States seeking more than $10,000, the Tucker Act confers exclusive jurisdiction on the Court of Federal Claims." *Id.*

"If the plaintiff's rights and remedies, as alleged, 'are *statutorily* or *constitutionally* based, then district[ ] courts have jurisdiction,' but if those rights and remedies 'are *contractually based* then only the Court of Federal Claims does.'" *Id.* at *3 (citing *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (emphasis in original). However, if the "action is a "disguised breach of contract claim" injunctive and declaratory relief are inappropriate. *Id.* Although Plaintiffs style their claim as a First Amendment constitutional violation to seek this preliminary injunction, Courts must look to the "substance" of the claim, "not merely its form." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995). Even if a claim is styled as a constitutional violation, a district court lacks jurisdiction if a case "is in 'its essence' contractual." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*,

672 F.2d 959, 968 (D.C. Cir. 1982)); *see also Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the [challenged action] was wrongful."). Importantly, the Plaintiffs' asserted connection between their speech activity and the grant terminations that is the basis of their First Amendment claim is based on statements from outside the Department (specifically, an article from the Daily Caller, a for-profit, non-defendant news organization), not the grants themselves or statements by the Department; this serves to obscure the essential "substance" of the contract-based claim and sought relief.

To determine whether a claim for injunctive and declaratory relief is in substance a contract claim, courts look to: (1) the source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought (or appropriate). *See Thakur*, 2025 WL 3760650 at *3 (citing *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994)). Because the source of Plaintiffs' claims are the grant awards, and the type of relief they seek is specific performance of those grant awards, both prongs of the test establish a lack of district court jurisdiction here.

First, the source of Plaintiffs' rights are the grant awards themselves—without the grant awards, Plaintiffs would have no claims for relief. *See Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999) (citation omitted) (noting "it is likely that no cause of action would exist at all" in the absence of the contract). Specifically, although styled as a First Amendment claim, Plaintiffs' claim is based wholly on the alleged improper terminations of the grant awards.[3]

---

[3] Plaintiffs' Complaint lists two claims for relief: Count One for Violation of the First Amendment, Compl. at ¶¶ 65-77, and Count Two for Violation of the Fifth Amendment, *id.* at ¶¶ 78-82. Under Count Two, Plaintiffs assert that the grant terminations "establish unconstitutionally vague standards for determining whether grant agreements will be terminated and do not tie the cancellation of grants to specific alleged acts or omissions[.]" *Id.* at ¶ 80. Plaintiffs' Motion for

"Because the United States's obligation is in the first instance dependent on the contract, these claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act." *Tucson Airport Auth.*, 136 F.3d at 647 (concluding that district court lacked jurisdiction under the Tucker Act over constitutional claim because it was contractually based).  Because Plaintiffs' claims could not "exist[] prior to and apart from rights created under the [agreements,]" this prong weighs in the government's favor and against district court jurisdiction. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)*; see also Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385-86 (Fed. Cir. 2001) (directing court transfer contract case asserting constitutional claims to the Court of Federal Claims).  In addition, as discussed *infra* Section II.a, Plaintiffs' First Amendment claim is unsupported by the facts in the record and therefore unlikely to succeed on the merits; a speculative First Amendment claim should not be used to transform Plaintiffs' essential contract action into a constitutional one in order to evade the proper jurisdiction of the Court of Federal Claims.

The relief prong of the test also strongly supports exclusive jurisdiction in the Court of Federal Claims.  Again, while Plaintiffs style their rights as based under the First Amendment, the relief sought—reinstatement of the terminated grants and a request to enjoin any future termination

---

Preliminary Injunction only argues that they are likely to succeed on the merits of their First Amendment claim and omits discussion of their Fifth Amendment Claim.  *See* Mot. at 14-26.  Accordingly, Plaintiffs have not met their burden of establishing a preliminary injunction is an appropriate remedy for their Due Process Claim. *See Ensign v. U.S. Bank Nat'l Ass'n*, No. 3:16-CV-01609-HZ, 2016 WL 6897785, at *2 (D. Or. Nov. 22, 2016) (noting the requesting party "must carry its burden of persuasion by a 'clear showing' of the four required elements" of a preliminary injunction).  Nonetheless, that claim is also based on the termination of the grant awards themselves and seeks specific performance of those contracts and accordingly is a breach of contract claim over which exclusive jurisdiction lies in the Court of Federal Claims.

of or interference with grant funds—is telling.[4] As *Thakur* recently noted, such relief is "designed to enforce an[ ] obligation to pay money pursuant to [the] grants" at issue, 2025 WL 3760650 at *3, and strongly supports a finding of exclusive jurisdiction in the Court of Federal Claims under the Tucker Act. *See also California*, 145 S. Ct. at 968 (concluding that the lower court likely lacked jurisdiction over claims regarding grant terminations because the remedy sought was ultimately an order to "enforce [the Government's] contractual obligation to pay money") (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)); *Sols. in Hometown Connections v. Noem*, No. 25-1640, 2026 WL 179590, at *7 (4th Cir. Jan. 23, 2026) (concluding, based on *California* and *NIH*, that plaintiffs were unlikely to succeed with respect to jurisdiction where the relief sought "at its core an order 'to restore' the Grant Program so that the plaintiffs could have 'funding' for their work . . . [a]nd the injunction order that they proposed would prohibit the defendants from 'dismantl[ing]' the Program and 'pausing, freezing, impeding, or blocking the disbursement of grant funds'").

Because Plaintiffs' claims are founded, by definition, on contracts with the government, and the relief sought is to reinstate the grants and enforce their specific performance, the Tucker Act "specifically bar[s] . . . any 'injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining of money damages'" and Plaintiffs' claims are accordingly outside this Court's jurisdiction. *See Presidential Gardens Assocs. v. U.S.*

---

[4] Unlike cases where district courts have retained jurisdiction over grant-related claims, Plaintiffs here claim they have suffered monetary damages and seek them through reinstatement of grants terminated mid-award. *Cf. Washington v. United States Dep't of Educ.*, 161 F.4th 1136, 1139–40 (9th Cir. 2025) (noting, under *California* and *NIH*, the Tucker Act was likely to apply in cases where "plaintiffs explicitly sought, and the district courts ordered, the immediate payment of past-due grant obligations and the continued payment of ongoing obligations based on midyear grant terminations").

*ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 143 (2d Cir. 1999); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (holding government would likely succeed in argument that exclusive jurisdiction for grant terminations lies in the Court of Federal Claims and concluding that constitutional claims did not change this calculus as they were still subsumed by the contracts); *Massachusetts v. NIH*, --- F.4th ----, 2026 WL 26059, at *4–6 (1st Cir. Jan. 5, 2026) ("[C]hallenges to the withholding of contractually awarded funds … belong in the [Court of Federal Claims.]").  Accordingly, because this Court lacks jurisdiction and this case should be in the Court of Federal Claims pursuant to the Tucker Act, Plaintiffs' motion should be denied.

## II.    Plaintiffs Do Not Make a Clear Showing They Are Entitled to a Preliminary Injunction

To warrant the "extraordinary and drastic remedy" of a preliminary injunction, *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), Plaintiffs must make a "clear showing" that they are entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).  Because Plaintiffs' First Amendment claim is based on Plaintiffs' inferential conclusions from statements made by non-parties to the case instead of actual evidence or statements from the Defendants, the harm they are suffering is largely monetary, and the harm to the government and the public interest would be expenditure of funds unlikely to be recouped, Plaintiffs cannot meet their burden and their motion should be denied.

### a.    Plaintiffs Do Not Have Sufficient Evidence to Show Their First Amendment Claims Are Likely to Succeed on the Merits

Plaintiffs' First Amendment argument rests entirely on a flawed premise: it substitutes Plaintiffs' own subjective interpretation of statements by non-defendants for the actual evidence in the record about what Defendants have said about the grant terminations at issue here, thereby conclusorily imputing speech-related motives to Defendants.  Because the currently available

evidence about Defendants' purpose behind terminating the at-issue grants does not establish a link to any statements by Plaintiffs about DEI programs, Plaintiffs have not met their burden of establishing that they are likely to succeed in their First Amendment claims that the at-issue grants were terminated on the basis of speech. To the contrary, the evidence that can be properly ascribed to Defendants—the termination letters and follow up communications, the declarations submitted herewith, as well as the statements by Secretary Burgum—show that the grants were terminated pursuant to the government's aim to cut costs and effectuate agency priorities. Compl. ¶¶ 31, 33, 36; Hutchinson Decl., ¶ 7; Lewandowski Decl., ¶ 7; Oster Decl., ¶ 7; Sage Decl., ¶ 7.

Plaintiffs' motion contains unsupported assertions such as "the Department of the Interior ('Interior') cancelled nearly 80 grant agreements with environmental and conservation non-profits *solely on the basis of their speech* unrelated to any federally funding activity[,]" Mot. at 2 (emphasis added), that "Defendants[] terminat[ed] . . . Plaintiffs' grants *based on their actual and perceived viewpoints on diversity*[,]" *id.* at 15 (emphasis added), and that "[n]o other plausible explanation exists for the termination of Plaintiffs' awards, and none was provided." Compl. ¶ 39. These statements are contradicted by the available evidence about Defendants' actual statements and actions related to the termination of the at-issue grants.

The following evidence in the current record attributable to the Defendants regarding the decision to terminate the at-issue grants includes that:

- Beginning on September 23, 2025, Plaintiffs received notices from the relevant grantor Department components, including the Bureau of Land Management, the National Park Service, the U.S. Fish and Wildlife Service, and the U.S. Geological Survey, that their grant awards were being terminated. Compl. ¶ 31.

- Those termination notices stated that the grants were being terminated pursuant to 2 C.F.R. Part 200.340[5] because they "no longer effectuate[d] the priorities" of the Department of Interior bureaus that issued the grants.  *Id.*

- United States Secretary of the Interior Doug Burgum posted a link to a Daily Caller article[6] on his X account and stated "Because of @DOGE's cost-cutting initiative, @Interior saved American taxpayers MILLIONS of dollars today by cutting nearly 80 grants for wasteful environmental groups.  Real action = real savings".  *Id.* ¶ 33.

- In response to inquiries from Plaintiffs, the Department reiterated that the grants were terminated because they no longer aligned with current program goals and agency priorities.  *Id.* ¶ 36.

- From the perspective of Department staff, the terminations in question were based on the justification asserted in the individual grant termination letters, *i.e.*, a change in agency priorities.  *See* Hutchinson Decl., ¶ 7; Lewandowski Decl., ¶ 7; Oster Decl., ¶ 7; Sage Decl., ¶ 7.

The only sources on which Plaintiffs rely, as the basis for any link between the terminated grants and any of Plaintiffs' speech activity, are statements from Daily Caller, a non-governmental for-profit media organization which is not affiliated with the Department, and an X post from non-defendant the Department of Government Efficiency ("DOGE").[7]  But statements from these non-

---

[5] Plaintiffs do not dispute that Section 200.340, which provides the key substantive and procedural guidelines for termination of awarded grants, gives the government the authority to terminate grants "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. Part 200.340 (emphasis added).

[6] Streb, *supra* n.1.

[7] Plaintiffs also note that Secretary Burgum issued a Secretary's Order entitled "Ending DEI Programs and Gender Ideology Extremism" on January 30, 2025, Mot. at 8.  The focus of that

governmental and non-defendant entities—particularly where they purport to ascribe contradictory motives to the stated reasoning provided by Defendants for the grant terminations—should not be conflated with the Defendants' own statements or override the actual evidence in the record at this time about Defendants' actions, which state that the grants were terminated to cut costs and because they no longer effectuated the agencies' priorities.[8]  Indeed, the DOGE X post also highlighted that the terminated grants were "wasteful" and the termination thereof resulted in "savings of $14M." Compl. ¶ 34.  And even the Daily Caller article specifically notes that "[t]he grants were cut as part of the DOI's effort to cut costs and save taxpayer dollars, *according to the agency*"[9] (emphasis added).

That DEI-related speech is not a sufficient basis for a preliminary injunction here is underscored by Plaintiffs' own acknowledgment that "[n]either Plaintiff [Institute for Bird Populations "IBP"] nor [Mid Klamath Watershed Counsel ("MKWC")] have published DEI policies[,]" Mot. at 3, and the Daily Caller article upon which Plaintiffs rely does not make any connection between any DEI policies from either IBP or MKWC to their grant terminations.[10]  The only Plaintiff tied to any DEI speech in the Daily Caller article is IAE, and Plaintiffs note that IAE's public DEI action plan "was effectuated completely separately and apart from the

---

order is on terminating "equity action plans" within the Department and does not implicate the grants at issue here which, as Plaintiffs acknowledge, relate to conservation and ecological projects, not DEI programs.  *Id.* at 11 (noting Plaintiffs did not use any direct federal funding to support DEI activities); Compl. ¶ 39.

[8] For one such example, Plaintiffs state that "Interior believed that each Plaintiff had 'publicly endorsed DEI values in recent years," Compl. ¶ 39, but the attribution for that quotation is the Daily Caller article, not any statement by any of the Defendants.

[9] Streb, *supra* n.1.

[10] Streb, *supra* n.1 ("The agency also cut awards for a few other environmental groups including the Institute For Bird Populations, the Mid Klamath Watershed Council, [*sic*] which primarily work to conserve wildlife and restore ecosystems and were receiving several DOI grants.")

government's grant-funded programs" and that "[n]o direct funding from the government supported work" on the goals outlined in the DEI action plan.  Compl. ¶ 40.  The current record shows that all communications between the Department and IAE rely upon the agency-priority termination justification, not any speech-related justification.  *Id.* ¶¶ 31, 36.

Based on their unsupported assertions that the Department cancelled the at-issue grants as a result of Plaintiffs' DEI-related speech, Plaintiffs argue that Defendants violated the First Amendment by: (1) regulating Plaintiffs' speech through viewpoint and content discrimination; (2) conditioning Plaintiffs' funding based on those viewpoints, and (3) retaliating against Plaintiffs for their speech by cancelling their federal funding.  Mot. at 15.  But these assertions impute motives to Defendants that are not in the record and are undermined by: (1) Plaintiffs' own acknowledgments that their grants were not related to DEI programs; (2) the fact that some of the Plaintiffs had not even publicly expressed views on DEI that could be used as the basis for viewpoint discrimination; and (3) the actual stated justifications by Defendants for the grant terminations were to cut costs and eliminate grants that did not effectuate the agencies' priorities. Without evidence directly tying the grant terminations to speech-related activity, Plaintiffs' First Amendment argument necessarily fails at the outset and is certainly not an appropriate basis for the extraordinary remedy of injunctive relief.  *Cf. Am. Council of Learned Societies v. McDonald*, 792 F. Supp. 3d 448, 487 (S.D.N.Y. 2025) (granting in part preliminary injunction based on First Amendment violations where record contained extensive and direct "evidence to support that assertion[,]" including declarations and emails from government employees tying grant terminations to certain viewpoints and policies).

Plaintiffs rely on statements by a non-governmental, for-profit media outlet to impute alleged First Amendment infringing motives to Defendants, but such a leap does not justify the

drastic relief of a preliminary injunction.[11]  Defendants' statements in the current record have not

cited any protected speech as the reason for the grant terminations.  This makes this case different

than other grant termination cases where courts have found a likelihood of success on the merits

as to First Amendment violations based on content and viewpoint discrimination.  For example, in

*Thakur v. Trump*, No. 25-4249, 2025 WL 3760650 (9th Cir. Dec. 23, 2025), the court found that

plaintiffs were likely to succeed on the merits of their First Amendment claims because the

government did "not dispute that it terminated the subject grants because they promoted DEI,

DEIA, or environmental justice." *Id.* at *4.  In that case, the record "showed that the agencies

selected grants for termination based on viewpoint" because the government did not dispute that

the grants were terminated because of their speech-related nexus.  *Id.*

  Unlike in *Thakur* and *Council of Learned Societies*, there is no comparable evidence in the

current record to establish that the government "aimed at the suppression of speech" in its

termination decisions for the at-issue grants.  *Cf. Am. 'of Univ. Professors v. Trump*, No. 25-CV-

07864-RFL, 2025 WL 3187762, at *1 (N.D. Cal. Nov. 14, 2025) (finding First Amendment

violation where "Plaintiffs have submitted overwhelming evidence. Across 74 declarations and

more than 700 pages of supporting documents, Plaintiffs show that the Administration and its

executive agencies are engaged in a concerted campaign to purge 'woke,' 'left,' and 'socialist'

viewpoints from our country's leading universities.").  Rather, the current record here—including

the statement from Secretary Burgum—shows that the terminations were done to cut costs and

because the awards "no longer effectuate[d] the program goals or agency priorities" under 2 C.F.R.

---

[11] Secretary Burgum's X post linking to the Daily Caller article should not be taken as a wholesale adoption by the Department of all the statements contained therein—particularly at the injunctive relief stage of the case—where Secretary Burgum's post itself focuses on the cost cutting benefits of the grant terminations and the article itself makes no DEI-speech connection to two of the three Plaintiffs.  Compl. ¶ 33; *supra* n.10.

Part 200.340, *see supra* at 12-13.  The government did not justify the terminations as related to DEI projects or because Plaintiffs had expressed viewpoints in support of DEI, which makes Plaintiffs unlikely to succeed on the merits of their First Amendment claims.[12]

There is similarly no evidence that Defendants "imposed unconstitutional conditions on Plaintiffs' grant awards[,]" Mot. at 20, because the awards were simply terminated; there is no evidence that Defendants "created an additional requirement to maintain grant funding that premises Plaintiffs' awards on their willingness to silence themselves[,]" *id.* at 21, because there is no suggestion that if Plaintiffs had no DEI-related speech the grants would not have been terminated.  To the contrary, as Plaintiffs acknowledge, neither IBP or MKWC even had public DEI policy speech.  Mot. at 3, 21-22.[13]  For the same reason, there is no evidence that Defendants retaliated against Plaintiffs' speech.  Because there is no sufficient nexus in the record between Plaintiffs' DEI-related speech or activity and the at-issue grant terminations, Plaintiffs are unlikely

---

[12] Plaintiffs claim that the grant terminations "created an environment where '[o]ne category of speech has been completely prohibited . . . [while o]ther categories of speech . . . are permitted." Mot. at 17.  But Plaintiffs do not offer evidence of any grants *not* being terminated because the grantees did *not* engage in DEI-related speech; to the contrary, as Plaintiffs acknowledge, two of the three Plaintiffs did not have public DEI policies, but their grants were nonetheless terminated. *Id.*  And again, there is no evidence in the current record to support Plaintiffs' assertion that "Defendants perceived IBP and MKWC's viewpoints on diversity to be unaligned with the Administration and Defendants targeted and punished both grantees on the basis of that perception." *Id.* at 18.  Plaintiffs explain this by stating Defendants were "overinclusive in their attempt" to eliminate grants to entities with DEI-related speech by eliminating grants to entities without any public DEI-related speech, but an equally plausible reading of the Department's action is that no such speech-related rationale underlies the Department's termination of the at-issue grants.

[13] There is no evidence in the current record that Defendants "terminated federal grants . . . to punish or silence Plaintiffs and others who pronounce support for DEI."  Mot. at 23.  In fact, the evidence on the record points to the contrary conclusion: that the September 23, 2025 grant terminations included entities like IBP and MKWC without public DEI-related policies. Mot. at 3, 21-22

to succeed on the merits of their First Amendment claim. Plaintiffs' motion for preliminary injunction should be denied.

### b. Plaintiffs Are Unlikely to Suffer Irreparable Harm Absent Injunctive Relief

Plaintiffs seeking preliminary injunctions are required to show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. As described above, Plaintiffs' claims of harm to their First Amendment rights are merely speculative and unsupported by the facts in the current record. *See supra* Part II.a; *Winter*, 555 U.S. at 22 (explaining that issuing a preliminary injunction "based only on a possibility of irreparable harm" would be "inconsistent" with treating a preliminary injunction as an "extraordinary remedy"); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("[A] preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm."). Any actions Plaintiffs have merely considered or taken voluntarily in response to a perceived threat to their First Amendment rights are insufficiently concrete to warrant a preliminary injunction. *Cf.* Mot. at 25 (noting harms including that Defendant MKWC removed a land acknowledgment statement from its website; Defendant IAE has "reconsider[ed] how it publicly expresses its mission and work," "fears that it will be unable to seek alternative funding[,]" and "raised the prospect of removing the organization's DEIJ statement and policy from its website"; and Defendant IBP "is concerned and confused about what language can be used in their future publications").

Plaintiffs' claims of harm from the loss of the grant funds also do not demonstrate sufficient *irreparable* harm to warrant a preliminary injunction. Plaintiffs make additional speculative assertions here that they may have trouble retaining employees, Mot. at 27, and that Plaintiff IAE has "potentially lost trust" with farmers who "may be reluctant to enter into agreements with IAE…in the future," *id.* at 28, which harms are insufficiently concrete as to rise to the level of

irreparable. While Plaintiffs assert that they have suffered financial harms in that they have had to lay off, reduce hours, or not hire regular and seasonal employees, and that the loss of funds have made it more difficult to accomplish their missions, these harms are unlikely irreparable and would not justify the extraordinary remedy of injunctive relief. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough."); *see also Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) ("There is no irreparable harm here because the plaintiffs can fund the desired travel themselves and then, if they prevail in this suit, obtain reimbursement. In other words, the harm is financial."). Plaintiffs have accordingly failed to establish irreparable injury absent injunctive relief and this factor weighs against the issuance of a preliminary injunction.

### c. The Balance of Equities and the Public Interest Weigh in the Federal Government's Favor

Finally, Plaintiffs cannot establish that the balance of equities and public interest—which merge in cases where relief is sought from the government, *Nken*, 556 U.S. at 435—favor granting a preliminary injunction here. The Supreme Court in *California* concluded that the balance of the equities favors the government in a grant termination challenge such as this because the public interest is harmed when the United States is forced to pay out funds that it may not be able to recover. 145 S. Ct. at 969. The Supreme Court subsequently reaffirmed this point in *NIH*, noting that "while the loss of money is not typically considered irreparable harm, that changes if the funds 'cannot be recouped' and are thus 'irrevocably expended.'" 145 S. Ct. at 2658 (citation omitted).

Here, the government "faces such harm" because, "[l]ike the plaintiffs in *NIH*, Plaintiffs 'do not state that they will repay grant money if the Government ultimately prevails.'" *Thakur*, 2025 WL 3760650, at *5; *cf. Sustainability Inst.*, 2025 WL 1587100, at *2 ("[T]he Government

has demonstrated irreparable harm because it is being forced to disburse funds from a finite appropriation and will not be able to recoup those funds once expended.").  And while Plaintiffs again claim the harm to them is constitutional injury to their First Amendment rights, as discussed *supra* Section II.a, at this stage of the case those harms are at most perceived based on speculation from non-defendants rather than the evidence in the record from Defendants.  To the extent the Court finds the balance of various factors close, this equities analysis should tip against an injunction. *See Thakur*, 2025 WL 3760650, at *5 (concluding that "the public interest would be harmed by requiring the agencies to continue to make payments pursuant to the grants, and that despite the harms identified by Plaintiffs, due consideration of the *Nken* factors warrants the entry of a stay" of previously issued preliminary injunction).

### III.  Any Injunctive Relief Should Be Stayed Pending Appeal, Accompanied By A Bond, And No Status Reports Should Be Required

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that may be authorized, or at a minimum, administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the court of appeals if an appeal is authorized.

Defendants also respectfully request that any injunctive relief accompany a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A bond is appropriate here given that any preliminary relief would potentially require the government to spend money that may be lost forever once distributed. *California*, 145 S. Ct. at 969.

Finally, Plaintiffs ask that if the Court grants Plaintiffs' requested relief, Defendants be required to file "within one week of entry of this order and every month thereafter until resolution of the merits, a Status Report documenting the actions that they have taken to comply with the Court's Order." Mot. at 34.  Such additional relief is unusual and unnecessary; indeed, the record shows that the Department has worked closely with Plaintiffs to extend their closeout obligations in light of this pending litigation.  *See* Hutchinson Decl., ¶¶ 3-4; Lewandowski Decl., ¶¶ 3-4; Oster Decl., ¶¶ 3-4; Sage Decl., ¶¶ 3-4.  If the Court orders Plaintiffs any relief, the presumption of regularity should apply and the Court should presume the government will comply with any such order. *See Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010).

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests the Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted this 30th day of January 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Alexis A. Lien*
Alexis A. Lien
Assistant United States Attorney
*Attorneys for Defendants*
