Anna Sortun,
OSB No. 045279
Direct: 503-802-2107
Email: anna.sortun@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile: 503-274-8779

Cortney Robinson Henderson*
Pablo A. Moraga*
Steven Y. Bressler*
Robin Thurston*
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Main: 202-448-9090
crhenderson@democracyforward.org

*Attorneys for Plaintiffs*
*Admitted *pro hac vice*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON**

EUGENE DIVISION

| | |
|---|---|
| INSTITUTE FOR APPLIED ECOLOGY *et al.*, | Case No. 6:25-cv-02364 |
| *Plaintiffs*, | |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| DOUG BURGUM *et al.*, | |
| *Defendants*. | |

# TABLE OF CONTENTS

I.    This Court has Jurisdiction to Provide Plaintiffs' Requested Relief. ......................................2

    A.    The Tucker Act Does Not Bar First Amendment Claims. ...............................................2

    B.    Plaintiffs' Claims are Based on the First Amendment. ...................................................5

    C.    Plaintiffs Seek to Enjoin a First Amendment Violation. ................................................7

II.   Plaintiffs are Likely to Succeed on the Merits of their First Amendment Claims .................9

    A.    The Record Supports Plaintiffs' Viewpoint Discrimination and Unconstitutional Conditions Claims ...........................................................................10

    B.    The Record Similarly Supports Plaintiffs' Retaliation Claims .....................................14

    C.    The Record Does Not Support Defendants' Stated Justification for the Grant Terminations...............................................................................................................16

III.  Plaintiffs have Suffered and Continue to Suffer Irreparable Harm .......................................19

IV.   The Balance of the Equities Tip Towards Plaintiffs ............................................................22

V.    There Should be No Bond or Stay Pending Appeal, and the Court Should Require Status Reports .......................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013) .................................................................................................... 6

*Am. Acad. of Pediatrics v. United States HHS*,
No. 25-cv-4505 (BAH), 2026 WL 80796 (D.D.C. Jan. 11, 2026) .................... 3, 4, 5, 6, 7

*Am. Ass'n of Univ. Professors v. Trump*,
No. 25-cv-, 2025 WL 3187762 (N.D. Cal. Nov. 14, 2025) ................... 3, 8, 14, 16, 18, 21

*Am. Council of Learned Soc'ys v. McDonald*,
792 F. Supp. 3d 448 (S.D.N.Y. 2025) ...................................................................... 14, 21

*Am. Fed'n of Gov't Emps., AFL-CIO v. Noem, No. C25-451 MJP*,
No. 25-cv-07864-RFL, 2025 WL 2337222 (W.D. Wash. Aug. 13, 2025) ........................ 3

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) .................................................................................................... 8

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) .................................................................................. 16, 19

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ...................................................................................................... 6

*Biggs v. City of St. Paul*, No. 6:18-CV-506-MK, 2019 WL 4575839 (D. Or. Mar. 7,
2019), *report and recommendation adopted sub nom. Koch v. City of St. Paul*,
No. 6:18-CV-0507-MK, 2019 WL 4544268 (D. Or. Sept. 18, 2019) ............................ 14

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .................................................................................................... 7

*Brown v. Young*,
No. 4:25cv419-MW/MJF, 2025 WL 3171160 (N.D. Fla. Nov. 13, 2025) ...................... 12

*California v. U.S. Dep't of Educ.*,
132 F.4th 92 (1st Cir. 2025) ........................................................................................ 5

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
155 F.4th 1099 (9th Cir. 2025) .................................................................................. 4, 7

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
   137 F.4th 932, 938 (9th Cir. 2025) ................................................................. 8

*Cmty. Legal Servs. In E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
   780 F. Supp.3d 897 (N.D. Cal. 2025) ........................................................... 23

*Cooper v. United States*,
   771 F. App'x 997 (Fed. Cir. 2019) ................................................................ 4

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022) ................................................................. 5, 7

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) ................................................................. 19, 20

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ................................................................................. 16, 17

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025) ....................................................................................... 4

*In re DeVos*,
   540 F. Supp. 3d 912 (N.D. Cal. 2021) ......................................................... 17

*Dickinson v. Trump, et al.* ,
   3:25-CV-2170-SI, 2026 WL 279917 (D. Or. Feb. 3, 2026) ..................... 20, 21

*Elrod v. Burns*,
   427 U.S. 347 (1976) ..................................................................................... 20

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
   82 F.4th 664 (9th Cir. 2023) .......................................................................... 9

*Index Newspapers LLC v. City of Portland*,
   480 F. Supp. 3d 1120 (D. Or. 2020) ............................................................ 15

*Jewish Legal News, Inc. v. U.S. Dep't of Educ.*,
   No. 23-CV-05064-PHK, 2025 WL 964032 (N.D. Cal. Mar. 31, 2025) ............ 2

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ..................................................................... 15

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ..................................................................... 20

*Koala v. Khosla,*
    931 F.3d 887 (9th Cir. 2019) ...................................................................... 11, 19

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton,*
    752 F.3d 755 (9th Cir. 2014) ............................................................................. 22

*Massachusetts v. NIH,*
    164 F.4th 1 (1st Cir. 2026) .................................................................................. 4

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ............................................................................ 5

*Mule v. Dep't of Educ. of City of N.Y.,*
    797 F. Supp. 3d 9 (E.D.N.Y. 2025) .................................................................. 13

*Museum of Handcar Tech. LLC v. Transportation Agency for Monterey Cnty.,*
    778 F. Supp. 3d 1065 (N.D. Cal. 2025), *vacated in part on other grounds,*
    No. 24-CV-08598-EKL, 2025 WL 1810265 (N.D. Cal. June 30, 2025).......... 9

*N. Star Alaska v. United States,*
    14 F.3d 36 (9th Cir. 1994) .................................................................................. 5

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump,*
    767 F. Supp. 3d 243 (D. Md. 2025) ................................................................. 23

*Nat'l Council of Nonprofits v.OMB,*
    775 F. Supp. 3d 100 (D.D.C. 2025) ................................................................. 19

*Nat'l Endowment for the Arts v. Finley,*
    524 U.S. 569 (1998)..................................................................................... 10, 14

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025)........................................................................................ 4

*Nat'l Rifle Ass'n of Am. v. City of Los Angeles,*
    441 F. Supp. 3d 915 (C.D. Cal. 2019) .................................................... 9, 12, 15

*Nat'l Rifle Assn'n of Am. V. Villo*
    602 U.S. 175 (2024)........................................................................................... 6

*NIH v. Am. Public Health Ass'n,*
    145 S. Ct. 2658 (2025)...................................................................................... 21

No. 25-cv-07864-RFL, 2025 U.S. Dist. LEXIS 224922 (N.D. Cal. Nov. 14, 2025)..................... 8

*Noble v. Cincinnati & Hamilton Cnty. Public Library*,
    112 F.4th 373 (6th Cir. 2024) ....................................................... 12

*O'Brien v. Welty*,
    818 F.3d 920 (9th Cir. 2016) ........................................................ 9

*Or. Council for Humans. V. United States DOGE Serv.'*
    794 F.Supp. 3d 840 (D. Or. 2025) ....................................... 5, 21, 22

*President & Fellows of Harvard Coll. v. DHS*,
    788 F. Supp. 3d 182 (D. Mass. 2025) ........................................ 14

*President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*,
    798 F. Supp. 3d 77 (D. Mass. 2025) ....................................... 3, 20

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) .............................................. 23

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) .................................................... 20

*Rosenberger v. Rector and Visitors of University of Virginia*,
    515 U.S. 819 (1995)............................................................... 10, 14

*Sols. in Hometown Connections v. Noem*,
    No. 25-1640, 2026 WL 179590 (4th Cir. Jan. 23, 2026)................... 3

*Soranno's Gasco, Inc. v. Morgan*,
    874 F.2d 1310 (9th Cir. 1989) .................................................... 16

*Starkey v. County of San Diego*,
    346 Fed. Appx. 146 (9th Cir. 2009)............................................. 16

*State v. United States Dep't of Educ.*,
    132 F.4th 92 (1st Cir. 2025)......................................................... 5

*Stephens v. United States*,
    165 Fed. Cl. 341 (2023) .............................................................. 4

*Sustainability Inst. v. Trump*,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025)................... 3

*Terminiello v. City of Chicago*,
    337 U.S. 1 (1949)...................................................................... 22

*Thakur v. Trump*,
    148 F.4th 1096 (9th Cir. 2025) ............................................................... 5, 10, 14

*Thakur v. Trump*,
    163 F.4th 1198 (9th Cir. 2025) ........................................................ 2, 5, 20, 21

*Thakur v. Trump*,
    787 F. Supp. 3d 955 (N.D. Cal. 2025) ........................................................ 2, 8

*Thakur v. Trump*,
    No. 25-4249, 2025 WL 3760650 (2025) ...................................................... 2, 5

*Tootle v. Sec'y of Navy*,
    446 F.3d 167 (D.C. Cir. 2006) ....................................................................... 4

*United Aeronautical Corp. v. U.S. Air Force*,
    80 F.4th 1017 (9th Cir. 2023) ....................................................................... 5

*United States v. Stanchich*,
    550 F.2d 1294 (2d Cir. 1977).......................................................................17

*United States v. Yassin,*
    No. 16–03024–01–CR–S, 2017 WL 1324141 (W.D. Mo. Feb. 23, 2017),
    *report and recommendation adopted*, No. 16-3024-01-CR-S-MDH, 2017 WL
    1337438 (W.D. Mo. Apr. 6, 2017) ................................................................12

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981).....................................................................................15

*Vida Enter. Corp. v. Angelina Swan Collection, Inc.*,
    No. 2:22-cv-00915, 2023 WL 2895702 (C.D. Cal. Apr. 11, 2023)................... 2

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) .......................................................................19

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*,
    774 F. Supp. 3d 86 (D.D.C. 2025) ...............................................................13

**FEDERAL STATUTES**

28 U.S.C. § 1331...............................................................................................9

**FEDERAL REGULATIONS**

Implementing the President's "Department of Government Efficiency" Initiative,
        Exec. Order No. 14,222 of February 26, 90 Fed. Reg. 11095 (March 2, 2025) ............... 13

Ending Radical and Wasteful Government DEI Programs and Preferencing,
        Executive Order No. 14151 of January 20, 2025, 90 Fed. Reg. 8339 (Jan. 29,
        2025) .................................................................................................................. 20

**OTHER AUTHORITIES**

Gabreilla Cantor and Ethan Gaskill, The Trump administration is flouting judges and
        laying the groundwork for further defiance of court orders, CREW (April 3,
        2025), https://www.citizensforethics.org/reports-investigations/crew-
        investigations/the-trump-administration-is-flouting-judges-and-laying-the-
        groundwork-for-further-defiance-of-court-orders/ ........................................... 23

Matt Peney and Jon Steinman, The Trump administration's conflict with the courts,
        explained, Protect Democracy (Oct. 2, 2025)
        https://protectdemocracy.org/work/the-trump-administrations-conflict-with-
        the-courts-explained/ ....................................................................................... 23

Restatement (Second) of Contracts § 344 (1981) ........................................................ 7

Ryan Goodman, Siven Watt, Audrey Balliette, Margaret Lin, Michael Pusic and
        Jeremy Venook, The "Presumption of Regularity" in Trump Administration
        Litigation, Just Security (November 20, 2025) ................................................ 23

*Secretary Doug Burgum*, X, https://x.com/SecretaryBurgum ..................................... 12

Defendants terminated Plaintiffs' grant agreements because of Plaintiffs' actual and perceived DEI and diversity viewpoints. That is clear from the record—and in particular from Defendants' *own*, contemporaneous public statements. These retaliatory terminations violated Plaintiffs' First Amendment rights; this Court should, accordingly, grant Plaintiffs' motion for emergency relief to vindicate those rights and prevent further harm.

In opposition, Defendants offer the post hoc rationalization that Interior cut Plaintiffs grants solely to reduce waste—a position that defies logic and contradicts the agency's public statements and endorsed posts (unless "waste" is capacious enough to include meritorious grants to organizations that have separately expressed protected views the government does not like). And at any rate, the Administration's cost-saving efforts do not justify or excuse Defendants' First Amendment violations. Defendants cannot weaponize their discretion to terminate federal grants to suppress public speech, and then avoid judicial review by hiding behind vague, unexplained justifications that contradict statements Defendants previously made and endorsed.

This Court has jurisdiction to grant Plaintiffs' requested relief. First Amendment challenges, like this one, are properly brought and decided by district courts. This case is not a mere contract dispute; Defendants' decision to use Plaintiffs' grant agreements and federal funding as means to violate Plaintiffs' constitutionally protected rights does not transform Plaintiffs' claims into contractual ones. Without judicial intervention, the ongoing suppression of Plaintiffs' free speech and expression will continue to wreak irreparable harm to Plaintiffs' work and reputation, the livelihoods of each organization's employees, and our nation's ecosystems and natural resources. For the reasons provided below, and in Plaintiffs' Motion for Preliminary Injunction, ECF No. 17 (Motion), Plaintiffs continue to respectfully request that the Court grant Plaintiffs' request for injunctive relief.

PAGE  - 1     **PLAINTIFFS' REPLY ISO MOTION FOR PRELIMINARY INJUNCTION**

**ARGUMENT**

I.  **This Court has Jurisdiction to Provide Plaintiffs' Requested Relief.**

    A.      **The Tucker Act Does Not Bar First Amendment Claims.**

Defendants ask this Court to invoke the Tucker Act to find that the government enjoys sovereign immunity from First Amendment liability, so long as they use grant terminations to punish government-disfavored speech. This baseless assertion directly contradicts controlling Supreme Court and Ninth Circuit precedent, decisions by other district courts in this Circuit and elsewhere, as well as decisions of the Court of Federal Claims. Defendants do not cite a single case where a court has held that a First Amendment claim must be heard in the Court of Federal Claims—nor could they. Courts have consistently held that district courts are the *only* forum that can review Plaintiffs' First Amendment claims and enjoin Defendants' unlawful actions.

First Amendment challenges are properly asserted in district court under controlling Ninth Circuit precedent, including *Thakur v. Trump* 163 F.4th1198 (9th Cir. 2025) ("Thakur IV*"). Though Defendants repeatedly cite the recent *Thakur v. Trump* amended order, which held that the district court did not have jurisdiction over a specific class of plaintiffs, *id. Thakur IV*, 163 F.4th at 1204, Defendants fail to mention the Ninth Circuit limited its jurisdictional holding exclusively to the class that brought *APA* claims. The Ninth Circuit further held that another class of plaintiffs bringing *First Amendment* claims was likely to succeed on the merits. *Id.* at 1206. In *Thakur,* the Ninth Circuit exercised its jurisdiction to hold that the government "selected particular grants for termination regardless of the programs through which they were funded, based on their connection to DEI, DEIA, and environmental justice"—just as Plaintiffs allege here. *Id.* at 1205. This only reinforces the Northern District of California's holding that the Tucker Act does not apply to grantees' First Amendment claims. *Thakur v. Trump*, 787 F. Supp. 3d 955, 991–92 (N.D. Cal. 2025) ("Here, as noted above, Plaintiffs have demonstrated that they

are likely to succeed on a First Amendment claim alleging viewpoint discrimination that has

nothing to do with the terms of the contracts. Plaintiffs cannot obtain injunctive relief to protect

that constitutional right in the Court of Federal Claims.")(*"Thakur III"*).

Other courts in this Circuit and elsewhere have consistently rejected the government's

argument that the Tucker Act deprives district courts of jurisdiction over First Amendment

claims. *See Am. Ass'n of Univ. Professors v. Trump*, No. 25-cv-07864-RFL, 2025 WL 3187762,

at *21 (N.D. Cal. Nov. 14, 2025) ("Nothing requires Plaintiffs' First Amendment challenge to

the Funding Cancellation to be routed to the Court of Federal Claims ('CFC'), which lacks the

power to issue injunctive relief to halt a First Amendment violation or to stop its chilling

effects.")(*"AAUP"*); *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, No. C25-451 MJP, 2025 WL

2337222, at *9 (W.D. Wash. Aug. 13, 2025) ("The Court also finds no merit in Defendants'

argument that the Tucker Act precludes Plaintiffs' First Amendment claim."); *President &*

*Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs*., 798 F. Supp. 3d 77, 107 (D.

Mass. 2025) ("[T]his Court cannot conclude that core First Amendment claims or pure statutory

violations fall within the exclusive jurisdiction of the Court of Federal Claims."); *Am. Acad. of*

*Pediatrics v. U.S. Dep't of Health & Human Servs.*, No. 25-cv-4505 (BAH), 2026 WL 80796, at

*13 (D.D.C. Jan. 11, 2026) ("*AAP*") ("AAP has made the required showing that jurisdiction to

consider its First Amendment claims properly rests in this Court and not the Court of Federal

Claims.").

Defendants cite no authority to the contrary. In fact, the cases Defendants rely on do not

even consider First Amendment claims.[1] Moreover, Defendants reliance on the Supreme Court's

---

[1] *Sols. in Hometown Connections v. Noem*, No. 25-1640, 2026 WL 179590 (4th Cir. Jan. 23, 2026) (does not consider First Amendment claims); *Sustainability Inst. v. Trump*,  No. 25-1575,

emergency docket opinions—*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ("*California*") and *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*NIH*")—are also inapposite. As the District Court for the District of Columbia recently explained, those cases, like the others cited by Defendants, "[b]oth concerned challenges raised under the APA." *AAP , 2026 WL 80796,* at *14. What is more, "[n]owhere in [*California*] or [*NIH*] does the Supreme Court hint, let alone express the view, that parties . . . have no forum in district court to hear First Amendment claims merely because the cases involve federal grants." *Id.* If it were to the contrary, "parties challenging government action involving government funding on First Amendment grounds would have no forum at all, since the Court of Federal Claims and the Federal Circuit have both determined that 'the Court of Federal Claims lacks jurisdiction over claims arising under the First Amendment . . . as they are not money-mandating.'" *Id.* (quoting *Stephens v. United States*, 165 Fed. Cl. 341, 348 (2023) (citing *Cooper v. United States*, 771 F. App'x 997, 1000-01 (Fed. Cir. 2019)). In other words, accepting Defendants' jurisdictional argument would give the government a hall pass to violate the First Amendment through grant terminations, as there would be no recourse for grantees punished for engaging in protected speech. This alone should be dispositive. *See Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1102 (9th Cir. 2025) ("[C]ourts 'categorically reject the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims.'" (quoting *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006)).

---

2025 WL 1587100 (4th Cir. June 5, 2025) (same); *Massachusetts v. NIH*, 164 F.4th 1(1st Cir. 2026) (same).

B.    **Plaintiffs' Claims Are Based on the First Amendment.**

An application of the two-part test for Tucker Act preclusion, derived from *Megapulse,*

*Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982), only confirms this result. Under *Megapulse*,

courts determine whether a claim is a "disguised breach-of-contract claim" by looking at the "(1)

source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought (or

appropriate)." *Thakur IV*, 163 F.4th at 1204 (citing *N. Star Alaska v. United States*, 14 F.3d 36,

37 (9th Cir. 1994)). The *Megapulse* test is "conjunctive, requiring satisfaction of both elements

to provide exclusive jurisdiction to the Court of Federal Claims." *AAP*, 2026 WL 80796, at *11

(citing *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022)).

Beginning with the source of rights, the Ninth Circuit has explained that "[i]f the

plaintiff's rights and remedies, as alleged, 'are *statutorily* or *constitutionally* based, then district [

] courts have jurisdiction." *Thakur IV*, 163 F.4th at 1204 (citing *United Aeronautical Corp. v.*

*U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (emphasis in original). Here, Plaintiffs'

claims are entirely derived from their right to free speech under the First Amendment, which

"exist[s] prior to and apart from rights created under the contract." *Thakur v. Trump*, 148 F.4th

1096, 1103 (9th Cir. 2025)(*Thakur II)* (citing *Crowley Gov't Servs., Inc.*, 38 F.4th at 1107). As

this Court recently explained, in *California* "the terms and conditions of each individual grant

award [we]re at issue." *Or. Council for the Humans. v. United States DOGE Serv*., 794 F. Supp.

3d 840, 879 (D. Or. 2025) (citing *California v. United States Dep't of Educ.*, 132 F.4th 92, 96-97

(1st Cir. 2025)). Conversely, where "[p]laintiff's claims are not premised on the specific terms of

any [] grant agreements," the Tucker Act does not apply. *Id.* Defendants themselves write that

"the basis of [Plaintiffs'] First Amendment claim is based on statements . . . not the grants

themselves." Defendants' Response to Plaintiffs' Motion for Preliminary Injunction, ECF No. 25

(Opp.) at 7. Defendants further acknowledge that any DEI-related speech "was effectuated

completely separately and apart from the government's grant funded program." Opp. at 13-14. Defendants thus concede the point—this dispute has nothing to do with the terms or performance of the grant agreements, and entirely to do with Plaintiffs' protected speech and viewpoints separate and apart from those grant agreements. *See AAP*, 2026 WL 80796, at *11 ("AAP's claims are not contractual in nature since these claims arise out of rights protected not by contracts but rather by statutes and the Constitution—and those rights exist completely separately from any terms created under the grant award agreements." (citation omitted)).

Defendants' argument that "the source of Plaintiffs' rights are the grant awards themselves," Opp. at 7, conflates the source of Plaintiffs' rights (*i.e.*, the Constitution) with the type of government action that has harmed Plaintiffs (*i.e.*, the grant terminations). A simple hypothetical reveals the dependent variable that Defendants overlook in their analysis: If, for example, Defendants had chosen to imprison Plaintiffs for engaging in protected speech instead of terminating their grant agreements, Plaintiffs would still have the *same* First Amendment claim because the source of their rights stems not from the tool the government used to injure plaintiffs (grant terminations or imprisonment), but, rather, the Constitution itself. It is a bedrock principle that government may not suppress or retaliate against protected speech or coerce by any means, financial or otherwise. *See Nat'l Riffle Ass'n v. Vullo*, 602 U.S. 175, 180 (2024) (First Amendment prohibits use of legal sanctions "and *other means* of coercion") (quoting *Bantam Books*, *Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (emphasis added); *President & Fellows of Harvard Coll.*, 798 F. Supp. 3d at 108; *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* ("AID"), 570 U.S. 205, 214-15 (2013) (First Amendment challenge to federal grants condition).

C.        **Plaintiffs Seek to Enjoin a First Amendment Violation.**

Because *Megapulse* is a conjunctive test, the Court's analysis "may end here." *AAP*, 2026 WL 80796,  at *11. Even so, Defendants' position fails on the second *Megapulse* prong as well. Plaintiffs only seek the classic, equitable remedies of declaratory and injunctive relief. *See* Compl., ECF No. 1 at 27. Defendants, however, insist that Plaintiffs' relief is still contractual because if the award terminations are set aside, Defendants will have to continue performing under the grant agreements and will be obligated to make payment to Plaintiffs. But, "the Supreme Court has long held, '[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Cmty. Legal Servs. in E. Palo Alto.*, 155 F.4th at 1105 (quoting *Bowen v. Mass.*, 487 U. S. 879, 893 (1988)). As the Supreme Court explained in *Bowen*, money damages "refers to a sum of money used as compensatory relief," while remedies in the form equitable relief "are not substitute remedies at all but attempts to give the plaintiff the very thing to which he was entitled to." *Bowen*, 487 U.S. at 895 (citation omitted). What the Supreme Court explains in *Bowen* are the blackletter contract principles that Defendants misunderstand. Damages and specific performance are both intended to *compensate* for the loss of a breach —*i.e.* "the interest of a promisee . . . [in] being put in as good a position as he would have been in had the contract been performed," Restatement (Second) of Contracts § 344 (1981)—which is oftentimes far below the cash value that the nonbreaching party would have received on the contract. The equitable relief requested by Plaintiffs, on the other hand, "provides value independent of any funds paid—the ability . . . to conduct the grant-funded programs without fear of arbitrary and abrupt termination." *AAP*, 2026 WL 80796, at *11 (citing *Crowley*, 38 F.4th at 1111 (describing the benefits of equitable relief requested there including "an answer to the question whether the [government] has authority" to take certain challenged actions)).

The Ninth Circuit in *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health and Human Servs. ("CLSEPA")*, recognized this distinction in holding that plaintiffs there "seek to ensure compliance with statutes and regulations, not any government contract." 137 F.4th 932, 938 (9th Cir. 2025). This reasoning applies with even greater force where, as here, and in *Thakur* and *AAUP*, plaintiffs seek to ensure compliance with the Constitution. *Thakur v. Trump*, 787 F. Supp. 3d 955, 991 (N.D. Cal. 2025) *("Thakur III")* ("[S]ending Plaintiffs to the Court of Federal Claims would deny them access to the principal remedy they seek:  emergency injunctive relief . . . Compensation for damages at the conclusion of a lawsuit in the Court of Federal Claims would not redress those harms . . ."); *AAUP,* 2025 WL 3187762, at *21 ("Plaintiffs are seeking injunctive relief to stop federal agencies from further chilling their members' speech through coercion and retaliation, not specific performance under a contract."). Just as the fact that enjoining unlawful government action would also impact a grant did not preclude jurisdiction in *CLSEPA, Thakur,* or *AAUP*, it does not preclude the Court's jurisdiction here.

Finally, Defendants accuse Plaintiffs of advancing a "speculative First Amendment claim" to hide a secret contract claim from the Court of Federal Claims. Opp. at 8. But as explained *infra* a First Amendment claim against a government official who publicly celebrated an attack on a plaintiff's speech can hardly be described as speculative. At any rate, this Court is not required to accept Defendants' bid to conflate the merits of the claim with jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006) (noting "the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief."). The strength of Plaintiffs' First Amendment claim is for this Court to decide, not the Court of Federal Claims.

*See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution . . . of the United States.").

**II. Plaintiffs are Likely to Succeed on the Merits of their First Amendment Claims.**

A moving party does not need to submit "overwhelming" or "extensive" evidence of a First Amendment violation to support a motion for preliminary injunction. Opp. at 14, 15 (internal citations omitted). Rather, "[i]n a First Amendment case[,] ... the party seeking [an] injunction need only demonstrate the existence of a colorable First Amendment claim." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist*., 82 F.4th 664, 694-95 (9th Cir. 2023) (cleaned up). "Once a plaintiff has made such a showing, the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *Museum of Handcar Tech. LLC v. Transportation Agency for Monterey Cnty*., 778 F. Supp. 3d 1065, 1076 (N.D. Cal. 2025), *vacated in part on other grounds*, No. 24-CV-08598-EKL, 2025 WL 1810265 (N.D. Cal. June 30, 2025) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).

Plaintiffs have more than met their burden. As the record demonstrates, Plaintiffs have colorable First Amendment claims that Defendants unlawfully discriminated and retaliated against Plaintiffs for their speech and viewpoints on diversity and imposed unconstitutional conditions on Plaintiffs' grant awards. At minimum, Plaintiffs have raised "'serious questions going to the merits'" that, in conjunction with the second and third *Winter* factors, justify granting Plaintiffs' request for preliminary injunctive relief. *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 928 (C.D. Cal. 2019).

Defendants, on the other hand, have not met their burden. Defendants have not shown that absent Plaintiffs' actual and perceived diversity-related speech, Interior would have terminated their grant agreements. Defendants' assertion that Plaintiffs' grants were terminated to combat "waste" unrelated to Plaintiffs' protected viewpoints and speech is not credibly

supported by the record, and Defendants fail to identify any other "change in agency priorities" justifying the termination of Plaintiffs' grants agreements. Opp. at 12. As a result, Defendants provide no plausible explanation for the grant terminations other than to suppress Plaintiffs' viewpoints on diversity and DEI.

### D.  The Record Supports Plaintiffs' Viewpoint Discrimination and Unconstitutional Conditions Claims.

The First Amendment prohibits the government from "regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The government cannot "'leverage its power to award subsidies on the basis of subjective criteria into a penalty on disfavored viewpoints' or 'aim at the suppression of dangerous ideas.'" *Thakur II*, 148 F.4th at 1108 (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998)). Such government action "is presumed to be unconstitutional," *Rosenberger,* 515 U.S. at 828, even when the speaker is a recipient of federal funding.

Defendants' intent to suppress Plaintiffs' diversity-related speech, and thereby discriminate against Plaintiffs' viewpoints and impose unconstitutional conditions on their grant agreements, is clearly reflected in the record:

- On September 23, 2025, Plaintiffs unexpectedly began receiving notices of termination for their Interior grant agreements, across the Departments' various subagencies,[2] for awards that in some cases had been renewed just weeks before. Compl. ¶¶ 3, 23, 26, 29 31.

---

[2] This simultaneous action across Interior is unusual, as Plaintiffs' grants are run by different subagencies and their respective grant management programs. Even in securing extensions on Plaintiffs' closeout obligations during this litigation, Interior would or could not act with coordination across its bureaus. Plaintiff IAE, for example, was required to reach out to each subagency/grant manager individually for confirmation of the extensions of their closeout obligations. Supplemental Declaration of Thomas Kaye ¶ 12.

- The notices did not provide *any* explanation for why Plaintiffs' grants were being cancelled, other than a blanket statement that the awards no longer effectuated agency priorities. *Id.* ¶ 31.

- As the termination notices continued to arrive that morning, a *Daily Caller* reporter emailed each Plaintiff to ask if they had any comments on their organization's DEI values as federal award grantees. *Id.* ¶ 30.

- That afternoon, *Daily Caller* published an article entitled "Trump Admin Axes Millions in Grants to Several DEI-Tied Environmental Organizations." *Id.* ¶ 32. The article mentions each Plaintiff; specifically highlighting Plaintiff IAE's DEI-related statements and quoting a diversity statement from Plaintiff IAE's website. *Id.* ¶ 32.

- That afternoon, Secretary Burgum announced the grant terminations via X, crediting DOGE's "cost-cutting initiative" and posting a link to the *Daily Caller* article. *Id.* ¶ 33.

- DOGE reposted Secretary Burgum's post the next day, boasting that DOGE worked with Interior to cancel awards because "[t]he grant recipient NGOs were not aligned with agency priorities, using taxpayers dollars for 'recruiting hiring, training and investing in staff and the organization to increase engagement diversity, accessibility and inclusivity across communities we live and work' and asserting that 'we are passionate about inclusion across gender, race, age, religion, identity and experience'." *Id.* ¶ 34. DOGE's post quotes Plaintiff IAE's DEIJ action plan. *Id.* ¶ 35.

- Defendants have not explained what change in agency priorities prompted the termination of Plaintiffs' grants, or whether the "change in priorities" was a priority to punish disfavored viewpoints, beyond these social media posts; and

- Plaintiff MKWC—whose diversity statement (a land acknowledgment) is no longer on its website—recently saw Interior renew an award that is duplicative of one of the grant agreements the agency terminated supposedly to "cut costs" in September. Supplemental Declaration of Will Harling ¶¶ 8-9.

In their opposition papers, Defendants' timeline of events omits the *Daily Caller* reporter's emails, the *Daily Caller* article posted by Secretary Burgum, and DOGE's post on X from the "evidence attributable to the Defendants regarding the decision to terminate" Plaintiffs' grants. Opp at 11-12. But the reporter's emails, the *Daily Caller* article, and DOGE's post are all relevant evidence of the government's motive, even if circumstantial. *See e.g., Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (motive may be shown with direct or circumstantial evidence

in First Amendment challenges); *see also Nat'l Rifle Ass'n of Am.*, 441 F. Supp. 3d at 941

(same). And both the article and DOGE post were explicitly supported, amplified, and endorsed

by Interior.

Interior cannot distance itself from the *Daily Caller* article because Secretary Burgum's

*own* post included a link to it. "Courts have long recognized that re-posting memes or other

content from other creators, without further comment, is akin to one's own speech." *Brown v.

Young*, No. 4:25cv419-MW/MJF, 2025 WL 3171160, at *4 (N.D. Fla. Nov. 13, 2025) (noting

that the "Plaintiff spoke when she reposted the third-party's speech as her own on her Instagram

story. Full stop."); *see also Noble v. Cincinnati & Hamilton Cnty. Public Library*, 112 F. 4th

373, 381 (6th Cir. 2024) (holding that individual who re-posted an offensive meme without

further commentary spoke on a matter of public concern inasmuch as "[h]is reposted meme

communicated his opposition to the BLM protests, which were active throughout the nation at

that time."). And when Secretary Burgum chose to repost the *Daily Caller* article—the only

article attached to his post—he chose to endorse its message that "Trump Admin Axes Millions

in Grants to Several DEI-Tied Environmental Organizations" to his one hundred and eleven

thousand followers.[3] *See Jewish Legal News, Inc. v. U.S. Dep't of Educ.*, No. 23-CV-05064-

PHK, 2025 WL 964032, at *8 (N.D. Cal. Mar. 31, 2025) ("'[R]etweeting' indicates a further and

potentially wider publication of an original social media posting.); *United States v. Yassin*, No.

16–03024–01–CR–S, 2017 WL 1324141 (W.D. Mo. Feb. 23, 2017), *report and recommendation

adopted*, No. 16-3024-01-CR-S-MDH, 2017 WL 1337438 (W.D. Mo. Apr. 6, 2017), at *5

---

[3] *Secretary Doug Burgum*, X, https://x.com/SecretaryBurgum. The Court may take judicial notice of Secretary Burgum's social media account and its follower count. *See e.g.*, *Vida Enter. Corp. v. Angelina Swan Collection, Inc.*, No. 2:22-cv-00915, 2023 WL 2895702, at *2 n.2 (C.D. Cal. Apr. 11, 2023).

("[Retweets] should be analyzed as if they were the Defendant's own words . . ."); *Mule v. Dep't of Educ. of City of N.Y.*, 797 F.Supp.3d 9, 35-36 (E.D.N.Y. 2025) (analyzing plaintiff's retweets as her own speech).

Nor can Interior disavow DOGE's X post. DOGE was tasked to "terminate . . . grants to . . . advance the policies of [the Trump] administration," Implementing the President's "Department of Government Efficiency" Costs Efficiency Initiative, Exec. Order No. 14,222 of February 26, 2025, 90 Fed. Reg. 11095 (March, 2, 2025), and Secretary Burgum's post directly attributed Interior's actions to DOGE's initiatives. The Secretary cannot cite DOGE as the impetus of Interior's decision to terminate Plaintiffs' grants, but then ask this Court to disregard DOGE's contemporaneous comments about those terminations. Those comments are evidence of the government's motives.

Defendants wrongly contend that because MKWC and IBP do not have, or have removed, their DEI or diversity statements, Interior could not have been motivated to suppress Plaintiffs' diversity-related speech when terminating their grants. But Defendants misunderstand the requirements of a First Amendment claim: "[t]here is no requirement for a showing of actual suppression of protected speech, just that the defendant's intentional hinderance of plaintiff's First Amendment activity resulted in some injury." As stated in Plaintiffs' papers, Motion at 3-4, 26-28, and reiterated below, *infra* at 19-22, both MKWC and IBP have been harmed by Defendants' actions, and face continued, irreparable harm each day.

Defendants also fail to acknowledge or refute that Interior discriminated against Plaintiffs based on both their actual and *perceived* speech and viewpoints. *See* Motion at 18 (citing *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 774 F. Supp. 3d 86, 88 (D.D.C. 2025) (The First Amendment's prohibition against government subjecting individuals to retaliation after engaging in protected speech "includes retaliatory actions based on perceived

viewpoint"); *Am. Council of Learned Soc'ys*, 792 F. Supp. 3d. 448, 485-493 (S.D.N.Y. 2025)
(same); *President & Fellows of Harvard Coll.*, 788 F. Supp. 3d at 207 (same). Further, it is not
dispositive that Plaintiffs' DEI and diversity-related speech may have occurred prior to the grant
terminations in September 2025. For one, the causal connection between Plaintiffs' DEI and
diversity-related statements and Interior's termination decision comes from the timing of
*Interior's* statements and endorsements, as a reflection of Defendants' expressed motive to
terminate Plaintiffs' agreements. And regardless, "[c]ourts have declined to adopt a bright line
rule designating when temporal proximity by itself is sufficient to establish an inference of
retaliation." *Biggs v. City of St. Paul*, No. 6:18-CV-506-MK, 2019 WL 4575839, at *14 (D. Or.
Mar. 7, 2019), *report and recommendation adopted sub nom. Koch v. City of St. Paul*, No. 6:18-
CV-0507-MK, 2019 WL 4544268 (D. Or. Sept. 18, 2019).

Further, all parties acknowledge that Plaintiffs' DEI and diversity-related speech is
outside the scope of the Plaintiffs' grants agreements. Opp. at 13-14. It was therefore
impermissible for Interior to use that speech as rationale to terminate Plaintiffs' grants. *See*
Motion at 19-22. "Even if Defendants are otherwise entitled to withhold a benefit or impose
conditions on it, they may not do so as a means of retaliating to deter disfavored speech". *AAUP*,
2025 WL 3187762, at *15. Plaintiffs have established a likelihood of success on their First
Amendment viewpoint discrimination and unconstitutional conditions claims.

E.    **The Record Similarly Supports Plaintiffs' Retaliation Claims.**

To prove a retaliation claim, "Plaintiffs must show that: (1) they were engaged in a
constitutionally protected activity; (2) the Federal Defendants' actions would chill a person of
ordinary firmness from continuing to engage in the protected activity; and (3) the protected
activity was a substantial or motivating factor in the Federal Defendants' conduct." *Index
Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1142 (D. Or. 2020). Defendants do
not dispute that Plaintiffs' statement and viewpoints on DEI are protected speech, or that

Interior's actions would chill a grantee of "ordinary firmness" from engaging in DEI-related speech. Defendants primarily contend that "there is insufficient evidence to support Plaintiffs' claim that their First Amendment rights have been infringed." Opp. at 1.

Defendants, however, fail to acknowledge that when "considering the likelihood of success on the merits, the district court is not strictly bound by the rules of evidence, as the 'preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Nat'l Rifle Ass'n of Am.*, 441 F. Supp. at 926 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). "Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings." *Id.* (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)). And circumstantial evidence of the government's intent and motives is sufficient evidence to support a First Amendment claim. *See Index Newspapers LLC v. City of Portland,* 480 F. Supp. 3d 1120, 1145 (D. Or. 2020) (crediting Plaintiffs' showing of "substantial circumstantial evidence of retaliatory intent to show, at the minimum, serious questions going to the merits").

As outlined above, *supra* at 10-13, both the direct and circumstantial evidence in the record demonstrates Plaintiffs' diversity and DEI-related viewpoints, actual and perceived, were a substantial motivating factor in the termination of their grants. Defendants do not dispute that the federal government is prohibited from retaliating or unlawfully discriminating against Plaintiffs based on their viewpoints or the content of their speech, and from imposing unconstitutional conditions on their grant funding. But the evidence shows that is precisely what the government did here. Plaintiffs have established a likelihood of success on their First Amendment retaliation claim.

**F.      The Record Does Not Support Defendants' Stated Justification for the Grant Terminations.**

Defendants urge the Court to accept their stated rationale for the grant terminations – "cost-cutting," Opp. at 3, – and to ignore the overwhelming evidence to the contrary. As the Ninth Circuit has repeatedly held, however, courts are entitled to consider the surrounding circumstances in assessing First Amendment claims, and preliminary relief is warranted when those circumstances "contradict[]" the Defendants' "pretextual assertion." *Starkey v. County of San Diego*, 346 Fed.Appx. 146, 148 (9th Cir. 2009) (reversing denial of preliminary injunction where record indicated government's rationale for viewpoint discrimination was pretextual); *see also Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) (plaintiff alleging First Amendment retaliation "may establish motive using direct or circumstantial evidence"); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (reversing summary judgement dismissing First Amendment retaliation claim where "timing and nature" and "notice" of plaintiff's suspension were "suspicious"); *AAUP*, 2025 WL 3187762, at *4 (granting preliminary injunction where circumstantial evidence indicated that government's conduct – although publicly predicated on a "laudable and important goal" – evinced an intent to suppress speech). When an agency's explanation is incongruent with the record evidence of its priorities and decision-making process, courts must reject "contrived reasons" lest judicial review become an "empty ritual." *Dep't of Com. v. New York*, 588 U.S. 752, 784–85 (2019).

Defendants' reasoning is distinctly contrived. For Defendants' "cost-cutting" explanation to ring true, every instance of DEI-related targeting of Plaintiffs' grants in the record would need to be mere happenstance. This would mean that the *Daily Caller* reporter *just so happened* to inquire about each Plaintiffs' DEI values on that same day that Interior terminated Plaintiffs' grants (including awards that had been recently granted and renewed), almost simultaneously,

across bureaus and subagencies; and, on that same day, Secretary Burgum's post on X about those terminations links to a *Daily Caller* article that *just so happened* to label each grantee as "DEI-tied" organizations; and the DOGE repost of Secretary Burgum's post *just so happened* to cite Plaintiff IAE and other group's DEI-related hiring statements as proof that the "recipient NGOs were not aligned with agency priorities." Defendants assert that *none* of these events, taken together, points to or suggests that the government was motivated, even in part, to terminate Plaintiffs' awards based on their actual or perceived DEI and diversity-related viewpoints. Defendants, in other words, ask this Court to suspend logical reasoning. But even outside the First Amendment context, where judicial review is more deferential, this Court is "not required to exhibit a naiveté from which ordinary citizens are free" when facing "an explanation for agency action that is incongruent with what the record reveals about the agency's priorities and decisionmaking process." *Dep't of Com.*, 588 U.S. at 785 (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (internal quotation marks omitted)); *see also In re DeVos*, 540 F. Supp. 3d 912, 916 (N.D. Cal. 2021) (deeming agency's stated rationale for action pretextual).

     Defendants' "cutting cost" excuse is further contradicted by Plaintiffs' stellar track record of performance under the grants, and the agency's confirmation that the grants were not terminated due to non-compliance. *See* Motion at 19. Interior even issued an award to MKWC that is duplicative of one of its terminated grant agreements, demonstrating that the grant was never too costly for the agency to maintain. *See* Supplemental Declaration of Will Harling ¶¶ 7-10. (MKWC fears further retaliation from the government could jeopardize this new award. *Id.* ¶ 10.) Interestingly, it appears that some of the work under Plaintiffs' IAE's now-terminated grants has not been cut from Interior's operations. Motion at 12. Instead, Interior has simply

shifted that funding to other organizations to replace IAE, and asked IAE to help Interior craft

new projects that pick up where IAE's work left off. Kaye ¶ 11.

Defendants' contrived and unsupported "cost-cutting" excuse is clearly a post-hoc

litigation justification for the termination of Plaintiffs' grants; a fact highlighted by Interior's

unexplained, alleged "change in agency priorities." Declaration of Melissa Hutchinson, ECF No.

28 at ¶ 7; Declaration of Gerald Lewandowski, ECF No. 26 at ¶ 7; Declaration of Ryan Oster,

ECF No. 29 at ¶ 7; Declaration of Heidi Sage, ECF No. 27at ¶ 7. Tellingly, none of Interior's

subagency declarants cite "waste" or "cost-cutting" as rationale for the grant terminations.

Hutchinson ¶ 7, Sage ¶ 7, Oster ¶ 7, Lewandowski ¶ 7. Instead, the declarants attest that "the

terminations at issue in this case were based on the justification asserted in the individual

termination notices—a change in agency priorities." Hutchinson ¶ 7, Sage ¶ 7, Oster ¶ 7; *accord*

Lewandowski ¶ 7 ("…the termination was executed consistent with the justifications stated in

the notice, a change in agency priorities."). But the declarants fail to explain or identify *any*

"change in agency priorities" that led to Plaintiffs' grant terminations. Hutchinson ¶ 7, Sage ¶ 7,

Oster ¶ 7, Lewandowski ¶ 7. Nor are these priorities identified in the Plaintiffs' termination

notices. *See* Declaration of Rodney Siegel, Ex. C. (ECF No. 20-3); Declaration of Will Harling,

Ex. E (ECF No. 21-5), Declaration of Thomas Kaye, Ex. D (ECF No. 19-4). Both the notices and

attestations are, as a result, so vague as to be meaningless.

Defendants' inability to identify the goals or priorities Plaintiffs' grants no longer

effectuate (outside of the government's posts on X which clearly link those priorities to the

Administration's anti-DEI agenda) is fatal to their opposition, as nothing in the record suggests

that Defendants would have terminated Plaintiffs' grants outside of Plaintiffs' connections to

DEI. *See AAUP*, 2025 WL 3187762 (finding a First Amendment violation when the government

did not "attempt to identify any [goals or priorities]" under Section 200.340). Interior is not allowed invoke Section 200.340's "no longer effectuates agency priorities" language without explanation and, in doing so, reduce the First Amendment to a "simple semantic exercise" *Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 128 (D.D.C. 2025).

Moreover, even if it were true that Plaintiffs' grants no longer effectuated "one of [Interior's] top priorities – cutting costs," Opp. at 2, that justification does not excuse Plaintiffs' other ill motives. An "[o]therwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *Koala*, 931 F.3d at 905 (quoting *Ariz. Students*, 824 F.3d at 869). In other words, while terminating grants to cut costs may be lawful government action on its face, choosing which grants to cut based on the grantees' constitutionally protected speech is not; a lawful motivation does not excuse an unlawful one. *See Nat'l Council of Nonprofits*, 775 F. Supp. 3d at 128 (finding likelihood of success on the merits of First Amendment claim because, inter alia, "[b]y appearing to target specific recipients because they associate with certain ideas, [the federal government] may be crossing a constitutional line").

Ultimately, Defendants' unexplained change in priorities, combined with Interior's own statements, and the *Daily Caller* article and DOGE statements it explicitly endorsed, and the other circumstances (*i.e.*, the *Daily Caller* emails and the unusual, simultaneous, cross-department action) surrounding the terminations, leaves only one plausible explanation for the termination of Plaintiffs' grants—the government's desire to suppress DEI and diversity-related viewpoints and speech.

### III. Plaintiffs have Suffered and Continue to Suffer Irreparable Harm.

"In the Ninth Circuit, 'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the

existence of a colorable First Amendment claim.'" *Dickinson v. Trump, et al.*, 3:25-CV-2170-SI, 2026 WL 279917, at *7 (D. Or. Feb. 3, 2026) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005)). "Because constitutional violations often cannot be adequately remedied through damages, the Ninth Circuit does 'not require a strong showing of irreparable harm for constitutional injuries.'" *Id.* (quoting *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019)).

Plaintiffs have "unquestionably" suffered irreparable harm as a result of Defendants' actions: Defendants actions have impinged upon each Plaintiff's freedom of speech and expression and that harm will continue absent judicial relief. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (same) (quoting *Elrod*, 427 U.S. at 373); *Cuviello*, 944 F.3d at 833 (same); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013)(same as to deprivation of constitutional rights generally). Plaintiff IAE, for example, fears that its speech may trigger further termination of their non-Interior federal agreements. Compl. ¶ 50. Plaintiff IBP has worked to remove the word "diversity" from all its grant applications, other publications and websites. Compl. ¶ 57. And Plaintiff MKWC removed the land acknowledgement statement from their website and scrubbed their publications of any references to "equity", "diversity", and "inclusion." Compl. ¶ 61. This harm alone warrants injunctive relief.[4]

---

[4] Plaintiffs' actions were not taken in response to an insufficiently concrete, "perceived" threat to their First Amendment rights. Opp. 17. As explained *supra* and as is clear from the record before the Court, Plaintiffs' grants were terminated because of their ascribed DEI and diversity-related viewpoints, as Defendants told the world. And this Administration has consistently sought to withhold federal funding from those it believes support diversity ideas that the President dislikes. *See* Ending Radical and Wasteful Government DEI Programs and Preferencing, Executive Order No. 14151 of January 20, 2025, 90 Fed. Reg. 8339 (Jan. 29, 2025); *Or. Council for Humans,* 794

Plaintiffs IAE and IBP have been forced to terminate, layoff, and furlough additional staff, or reduce their hours, since bringing this litigation. Supplemental Declaration of Rodney Siegel ¶ 2; Supplemental Declaration of Thomas Kaye ¶ 3. These staff are highly trained and experts in their fields, Supp. Decl. of Siegel ¶ 2; Plaintiffs might lose them to other employment absent judicial relief. Motion at 26-27. As spring approaches, Plaintiff IAE's window to hire seasonal workers is closing, and the organization risks being unable to hire any seasonal workers for 2026 because of the termination of its grants. Suppl. Decl. of Kaye ¶ 5. Likewise, Plaintiff MKWC is presently unable to defend fire-prone northern California against the coming drought year through vital fuels reduction work. Supp. Decl. of Harling ¶ 3. In the meantime, morale and productivity among Plaintiff IAE's full-time employees is low, as staff worry about job stability and their now-fragile relationships with IAE's federal partners. Supp. Decl. of Kaye. ¶ 4. The uncertainty surrounding Plaintiff MKWC's funding has threatened its ability to retain staff and hire new staff. Supp. Decl. of Harling ¶ 5.

In addition to the loss of their First Amendment freedoms and funding that supported Plaintiffs' workforce, missions and operations, Plaintiffs have and continue to suffer reputational harm, which "is not easily measured or fully compensable in damage and thus is often held to be

---

F. Supp. 3d at 840 (challenging mass termination of NEH grants connected to DEI topics by DOGE); *AAUP,* 2025 WL 3187762 (challenging funding freezes and terminations designed to chill universities' DEI-related speech and activities); *President & Fellows of Harvard Coll.,* 798 F. Supp. 3d 77 (1st Cir. 2025)(challenging funding freezes and terminations connected to university's alleged DEI-related activities); *Thakur III,* 163 F.4th at 1206.(mass termination of federal funding to university based on university projects connection to DEI where government "does not dispute that it terminated the subject grants because they promoted DEI, DEIA, or environmental justice…",  plaintiffs likely to succeed on First Amendment claims); *Am. Council of Learned Soc'ys,* 792 F. Supp. 3d 448 (S.D.N.Y. 2025)(mass termination of National Endowment for the Humanities funding based on connection to DEI-related topics, granting preliminary injunction, in part, on First Amendment claims); *NIH v. Am. Public Health Ass'n,* 145 S. Ct. 2658 (2025)( mass termination National Institutes of Health funding connected to DEI).

irreparable." *Or. Council for Humans,* 794 F. Supp. 3d at 892 (internal quotations omitted); *see also* Supp. Decl. of Harling ¶ 6 (annual evaluations with MKWC staff reveal extensive damage to partner relationships). Plaintiff IAE's Interior contacts will no longer work with or even associate with IAE. Supp. Decl. of Kaye ¶ 8. IAE's annual conference, for example, has seen a noticeable decline in government registrants compared to prior years. *Id.* When IAE inquired why no federal employees were registering for the conference, an Interior contact suggested that Interior's decision to terminate Plaintiffs grants in September a played role. *Id.* ¶ 9.

Likewise, the termination of Plaintiffs' grants has and continues to harm the natural environment Plaintiffs' work and missions support. "[E]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014) (internal quotations omitted). Unless relief is granted soon, several projects—including wildfire prevention efforts, and rare, native seed planting and harvesting—that are only possible in the spring season will go unfulfilled. *See* Supp. Decl. of Harling ¶¶ 3-4 (describing fuels reduction and habitat restoration projects held up by grant terminations); Supp. Decl. of Kaye ¶¶ 5-7 (describing loss of seasonal workers for 2026 and winding down projects in partnership with local prisons).

**IV. The Balance of the Equities Tip Towards Plaintiffs.**

The balance of equities clearly weighs in Plaintiffs' favor. *See* Motion at 29-30. "The public interest in protecting First Amendment rights cannot be overemphasized. Freedom of speech… is 'one of the chief distinctions that sets us apart from totalitarian regimes.'" *Dickinson*, 2026 WL 279917, at *9 (quoting *Terminiello v. City of Chicago,* 337 U.S. 1, 4 (1949)). Defendants argue that the balance of equities favors the government because "the public interest is harmed when the United States is forced to pay out funds that it may not be able to recover."

Opp. at 18. Yet Interior seems to be simply transferring Plaintiffs' terminated grant funding from Plaintiffs to other organizations—with little concern for the public's interests in the government's coffers (and in contradiction to Defendants' "post-hoc" commitment to cutting costs). Defendants are therefore not harmed by a return to the status quo, as Plaintiffs have requested. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (the federal government faces no "harm from an injunction that merely ends an unlawful practice").

## V. There Should be No Bond or Stay Pending Appeal, and the Court Should Require Status Reports.

For the reasons stated in Plaintiffs' Motion, this court should not require bond. *See* Motion at 32-33. Courts have discretion to set nominal bonds of zero dollars and routinely do so when nonprofit organizations sue to protect their constitutional rights, as Plaintiffs are here. *See Cmty. Legal Servs. in E. Palo Alto*, 780 F. Supp. 3d 897, 926 (N.D. Cal. 2025).

In the event that this Court grants Plaintiffs' Motion, Plaintiffs object to Defendants' premature request for a stay pending the disposition of any appeal. Injunctive relief is necessary to prevent continued suppression of Plaintiffs' speech and further harm to Plaintiffs' operations and to the environment and wildlife Plaintiffs protect. Defendants have offered no rationale explaining why a stay pending appeal would be appropriate or outweigh the risk of Plaintiffs' continued harm.

Finally, if injunctive relief is granted, Plaintiffs reiterate their request for regular status reports from Defendants. Based on this Administrations' lack of compliance with court orders in other litigation, Plaintiffs' request for status reports here is not unusual.[5] Defendants' work to

---

[5] Matt Peney and Jon Steinman, *The Trump administration's conflict with the courts, explained*, Protect Democracy (Oct. 2, 2025) https://protectdemocracy.org/work/the-trump-administrations-conflict-with-the-courts-explained/ ("Since taking office, the Trump administration has employed various tactics to avoid complying with some of the dozens of orders courts have issued limiting its authority…In the first six months of this administration alone, courts in at least 12 cases have found that the administration violated one or more court orders."); Ryan Goodman, Siven Watt, Audrey Balliette, Margaret Lin, Michael Pusic and Jeremy Venook, *The*

extend Plaintiffs' closeout obligations, while helpful, has been inconsistent across Interior's subagencies. (Plaintiff IAE is still waiting for formal confirmation of extensions from their grant benefit managers; some points of contact have been unresponsive and may have left federal service, and the grant management systems have not been updated. Supp. Decl. of Kaye ¶ 12.) Regular status reports would help ensure compliance with this Court's order across Interior's subagencies and dozens of programs, grant benefit managers, and relevant personnel.

## CONCLUSION

For these reasons, and the reasons provided in Plaintiffs' Motion and supporting memorandum, the Court should grant Plaintiffs' Motion and issue a preliminary injunction consistent with Plaintiffs' requested relief.

*Signatures on following page.*

---

*"Presumption of Regularity" in Trump Administration Litigation*, Just Security (November 20, 2025), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation (cataloging 26 cases in which courts have found the Trump administration in noncompliance with judicial orders); Gabreilla Cantor and Ethan Gaskill, *The Trump administration is flouting judges and laying the groundwork for further defiance of court orders*, CREW (April 3, 2025), https://www.citizensforethics.org/reports-investigations/crew-investigations/the-trump-administration-is-flouting-judges-and-laying-the-groundwork-for-further-defiance-of-court-orders/ ("We could potentially see court order defiance on issues such as reproductive rights, preservation of government records, the unlawful removal of governmental officials conducting independent oversight, suppressing free speech and political opposition and more.").

Dated: February 13, 2026                         Respectfully submitted,

_/s/ Cortney Robinson Henderson_

Anna Sortun,
OSB No. 045279
Direct: 503-802-2107
Email: anna.sortun@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile: 503-274-8779

Cortney Robinson Henderson*
Pablo A. Moraga*
Steven Y. Bressler*
Robin Thurston*
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Main: 202-448-9090
crhenderson@democracyforward.org

_Attorneys for Plaintiffs_
*Admitted _pro hac vice_